IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Mark J. Leach | ) | |
| | ) | Civil Action No. 10-449 |
| Debtor. | ) | |
| | ) | |
| Wells Fargo Home Mortgage, *et. al.* | ) | |
| Appellant, | ) | (Appeal related to Bankruptcy Case |
| | ) | No. 09-21594) |
| v. | ) | |
| | ) | |
| Mark J. Leach, | ) | |
| Appellee. | ) | |

# **MEMORANDUM OPINION**

CONTI, District Judge.

*Introduction*

Pending before the court is an appeal by appellant Wells Fargo Home Mortgage ("Wells Fargo" or "creditor") from an order of the bankruptcy court dated February 23, 2010. (Bankr. W.D. Pa. No. 09-21594) (Docket No. 75). The bankruptcy court denied a motion to reform a mortgage and for relief from an automatic stay filed by Wells Fargo (Id.) (Docket No. 36). After considering the submissions of the parties, the February 23, 2010 order of the bankruptcy court is reversed because as a matter of law the mortgage in issue should be reformed to include certain residential real property owned by appellee Mark J. Leach ("Leach" or "debtor"). The matter must be remanded for the bankruptcy court to determine whether the adjacent property is included in the mortgage and to reconsider whether relief from the automatic stay should be granted.

*Background*

Debtor and his wife, Doretta Leach (collectively, the "mortgagors"), own as tenants by the entirety a parcel of real property on which their residence is located (the "residential property"). (Appellant's App. (Civil Action No. 10-449, Docket No. 2) at 316.) The mortgagors also own a separate parcel of real property adjacent to the residential property (the "adjacent property") on which a tennis court was constructed and which has been extensively landscaped. (Appellant's App. at 316.) The mailing address of the residential property is 688 Maple Drive, Monongahela, Pennsylvania 15063. (Id.) The adjacent property does not have a separate mailing address. (Id.) Debtor considered the mailing address of the residential property to be the *de facto* address of the adjacent property and frequently referred to it in that manner. (Id. at 327.)

The mortgagors applied in early August 1999 for a loan in the amount of $240,000. (Appellant's App. at 316.) "The primary purpose of the loan was to pay off a previous mortgage lien on the properties." (Id.) An appraisal was conducted in connection with the loan application and contained references to the residential property. (Id. at 324.) The loan application was approved and closed on August 31, 1999. (Id.) At the closing the mortgagors granted Crossland Mortgage ("Crossland") (subsequently acquired by Wells Fargo) a first-priority mortgage in the amount of $240,000 that Crossland duly recorded. (Id.) The metes and bounds description of the property attached to the mortgage was of the adjacent property and not the residential property. (Id.)

The loan application listed the residential property mailing address as the "Subject Property" and indicated that the property would be the "Primary Residence". (Id. at 325.) The HUD-1 Settlement Statement additionally specified that the "Property Location" was to be the

residential property mailing address. (Id. at 326.) The Truth-In-Lending Disclosure document stated that the "Property Address" was the residential mailing address and that "debtor was granting Crossland a security interest in 688 Maple Drive." (Id.) "The Occupancy Declaration listed 688 Maple Drive as the property address and stated that debtor would occupy the 'Subject Property' as his principle residence." (Id.) The mortgage stated the encumbered property address was 688 Maple Drive and noted the property was a "Single Family" residence. (Id. at 200; Hr'g Tr. at 57.) All the documents listed above (excluding the Appraisal Report) were signed or initialed by debtor at the closing of the August 1999 real estate transaction. (Id. at 325.) Debtor does not dispute the statements and declarations listed above. (Id. at 326.)

Debtor stated that he "'assumed' the mortgage encumbered the residential property as well [sic] the adjacent property because he 'would have thought that would have been the better decision' for Crossland based on the values of the residential property and the adjacent property" at closing. (Id. at 328.) Debtor further stated that "he 'thought' the residence was consideration for the loan" at closing. (Id.)

Debtor subsequently defaulted on the loan and Wells Fargo commenced a mortgage foreclosure action in state court in 2004 with respect to the residential and adjacent properties. (Id. at 317.) After debtor informed Wells Fargo that the property description in the mortgage only referred to the adjacent property, Wells Fargo moved to dismiss the action in mortgage foreclosure. (Id.)

"On January 28, 2005, debtor granted a mortgage in the residential property to . . . the Mark J. Leach Irrevocable Trust to secure payment of an alleged debt in the amount of $140,000 arising from a promissory note debtor purportedly executed on March 14, 2004." (Id.) "The description of the property subject to the mortgage was of the residential property." (Id.) Debtor

3

filed a voluntary chapter 7 bankruptcy petition on March 9, 2009. (Id.) Debtor's bankruptcy petition schedules identified the residential property with a declared value of $200,000 and the adjacent property with a declared value of $50,000. (Id. at 318.)

Debtor filed a motion "seeking a determination that the mortgage lien of Wells Fargo attached to the adjacent property but not to the residential property." (Id.) Wells Fargo filed a cross-motion to reform the mortgage and for relief from the automatic stay. The bankruptcy court determined that an evidentiary hearing was required to resolve the dispute. (Id. at 319.) The bankruptcy court issued an order and memorandum opinion dated February 23, 2010 denying Wells Fargo's motion. (Id. at 314, 335.) On March 3, 2010, Wells Fargo filed a notice of appeal with this court. (Id. at 338.)

*Standard of Review*

This court has jurisdiction over the appeal from the bankruptcy court's order dated February 23, 2010 pursuant to 28 U.S.C. § 158(a). A district court, "in reviewing the decision of a bankruptcy court, must apply a clearly erroneous standard to findings of fact and exercise plenary review over conclusions of law." Rosen v. Bezner, 996 F.2d 1527, 1530 n.2 (3d Cir. 1993); see In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) (where the parties disputed the proper standard of review to be applied, the court held that "it is settled law that this court applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component"); Brown v. Pa. State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1989) (holding that "the findings of fact by the bankruptcy court are reviewable only for clear error" and "legal questions are, of course, subject to plenary review").

*Discussion*

The issue before the court raises a matter of state law – whether a mortgage should be reformed under Pennsylvania law. Wells Fargo argues that the bankruptcy court erred as a matter of law in determining Wells Fargo did not establish by clear and convincing evidence that the mortgage should be reformed to include the residential property. "Reformation . . . [is an] equitable remed[y] that [is] sparingly granted." H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980). Reformation of a contract "presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorialize[d] the agreement." H. Prang, 613 F.2d at 1239. The Pennsylvania Supreme Court stated in Regions Mortgage, Inc. v. Muthler, 889 A.2d 39, 41 (Pa. 2005), that "[i]t has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake."[1] Regions Mortgage, 889 A.2d at 41 (citing Kutsenkow v. Kutsenkow, 202 A.2d 68, 68-69 (Pa. 1964)). A court has the authority "to reform the written evidence of a contract and make it correspond to the understanding of the parties." Bugen v. N.Y. Life Ins. Co., 184 A.2d 499, 500 (Pa. 1962).

To warrant reformation based upon mutual mistake, the movant must demonstrate that "both parties to [the] contract [were] mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of [the] contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake that is clear, precise and convincing."

---

[1] Black's Law Dictionary defines mistake as "[a]n error, misconception, or misunderstanding; an erroneous belief." BLACK'S LAW DICTIONARY 1022 (8th ed. 2004). See RESTATEMENT (SECOND) OF CONTRACTS §151 cmt. a (1979) ("The word 'mistake' is used to refer to an erroneous belief. A party's erroneous belief is therefore said to be a 'mistake' of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives.").

5

Zurich Am. Ins. Co. v. O'Hanlon, 968 A.2d 765, 770 (Pa. Super. Ct. 2009) (citing Holmes v. Lankenau Hosp., 627 A.2d 763, 767-68 (Pa. Super. Ct. 1993)). Additionally, the movant must clearly show the actual intent of the parties at the time the instrument was executed. Giant Eagle, Inc. v. Federal Ins. Co., 884 F. Supp. 979, 988 (W.D. Pa. 1995); Hassler v. Mummert, 364 A.2d 402, 403 (Pa. Super. Ct. 1976). To determine whether mutual mistake exists, the court may consider the subject matter, the apparent object or purpose of the parties and the conditions existing when the instrument was executed. Daddona v. Thorpe, 749 A.2d 475, 487 (Pa. Super. Ct. 2000); see Yuscavage v. Hamlin, 137 A.2d 242, 244 (Pa. 1958).

Even if one party to the contract denies the existence of a mistake, the other party may still show there was a mutual mistake. Bollinger v. Cent. Pa. Quarry Stripping & Constr. Co., 229 A.2d 741, 742 (Pa. 1967). The negligence of one party to the contract in failing to recognize the error in executing the agreement does not prevent that party from later asserting mutual mistake. See General Electric Credit Corp. v. Aetna Cas. & Sur. Co., 263 A.2d 448, 457 (Pa. 1970) ("if all of the elements necessary for the reformation of a written contract are present, mere negligent conduct on the part of one of the parties thereto in failing to discover the mistake will not bar reformation in the absence of prejudice or a violation of a positive legal duty").

To satisfy the clear and convincing standard in reformation cases, the movant must provide evidence by "two witnesses, or one witness and corroborating circumstances." Blair v. Manhattan Life Ins. Co., 692 F.2d 296, 303 (3d Cir. 1982) (citing Easton v. Washington County Ins. Co., 137 A.2d 332, 337 (Pa. 1957)). The witnesses presented

> must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the [finder of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

Lessner v. Rubinson, 592 A.2d 678, 681 (Pa. 1991) (citing In re Estate of Fickert, 337 A.2d 592, 594 (Pa. 1975).  Importantly, "the most trustworthy form of corroboration" is the surrounding circumstances.  Broida v. Travelers' Ins. Co., 175 A. 492, 494 (Pa. 1934); see General Electric, 263 A.2d at 456 (witness' testimony was "enhanced by the very substantial corroborating circumstances").  As a general rule, parol evidence may also be introduced to demonstrate the existence of mutual mistake.[2]  Bugen, 184 A.2d at 501.

Under Pennsylvania law, whether the evidence meets the "clear and convincing" burden of proof is a question of law and is therefore subject to plenary review by the appellate court.  See Blair, 692 F.2d at 299 ("the sufficiency of the evidence to meet . . . the 'clear and convincing' standard is a question of law"); Commonwealth v. Sanford, 863 A.2d 428, 431 (Pa. 2004) (whether the Commonwealth met its burden of proof by producing clear and convincing evidence was a question of law); Easton, 137 A.2d at 337 ("[w]hether the plaintiffs' evidence met this [clear, precise and indubitable] standard . . . is again a question of law for the court"); Titusville Trust Co. v. Johnson, 100 A.2d 93, 97 (Pa. 1953) ("[w]hether the evidence meets [the clear and convincing] standard (or any other prescribed standard) of proof is always a question of law for the Court"); Aliquippa Nat. Bank v. Harvey, 16 A.2d 409, 414 (Pa. 1940) ("[w]hether the evidence is true is a question of fact . . .; but whether it meets the required standard . . . is always a question of law . . ."); but see Pocono Manor Investors, LP v. Pa. Gaming Control Bd., 927 A.2d 209, 229 n.14 (Pa. 2007).[3]

---

[2] See RESTATEMENT (SECOND) OF CONTRACTS § 152 cmt. a (1979) ("[t]he parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken").
[3] In Pocono, the Pennsylvania Supreme Court declined to accept petitioner's argument that its claim involved an "error of law".  Pocono, 927 A.2d at 229.  The court suggested that even if it were to address such an inquiry, it was unclear what standard of review would apply.  Id.  The court explained in dicta the petitioner's theory that the error of respondent (a government agency) in applying the facts to a clear and convincing standard raised a mixed question of law and fact, as opposed to strictly a question of law.  Id. at 229 n.14.  The court took the position that "some mixed questions are more heavily weighted toward fact, while others are more heavily weighted towards law.

7

The bankruptcy court held an evidentiary hearing and concluded that Wells Fargo did not prove by clear and convincing evidence that "the absence of the residential property from the property description was the result of a mutual mistake by Crossland and debtor." (Appellant's App. at 323.) After considering debtor's statements, the collection of documents available to the parties at closing, and the surrounding circumstances, this court concludes the evidence is sufficient to establish clearly and convincingly that the failure to include the residential property description in the mortgage was the result of mutual mistake.

It should be noted that each piece of evidence found by the bankruptcy court should not be viewed in isolation; rather, the court must consider the evidence collectively to determine whether Wells Fargo met its burden. *See* <u>Daddona</u> *supra*; <u>Bolinger</u>, 299 A.2d at 742 (affirming the trial court's decision to reform the contract based upon mutual mistake after considering all the evidence, including the actions of the parties, witness statements, and the circumstances surrounding the contract's formation).

The documents available to the parties and signed or initialed by debtor at the closing are significant because they share a common "residential" theme. Each document lists the "property" or "subject property" address of 688 Maple Drive, Monongahela, Pennsylvania 15063 as the relevant mailing address identified with the parcel of land subject to the mortgage. Tellingly, the loan application, Occupancy Declaration, Appraisal Report and the mortgage all use the terms "residence" or "single family" or "single family residence" in conjunction with 688 Maple Drive - the property address subject to the mortgage.[4] This language clearly demonstrates

---

The more fact intensive a determination is, the more deference a reviewing court should give the conclusion below." <u>Id.</u>

[4] In the context of single family living, Black's Law Dictionary defines residence as "[a] house or other fixed abode; a dwelling." BLACK'S LAW DICTIONARY 1335 (8th ed. 2004). For a discussion of the term "family", <u>see</u> 12 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 79C.04(2)(b), at 79C-99 (2008) ("Generally, a minimum requirement is that the occupants of a single-family dwelling live together as a single housekeeping unit."). For an explanation of residential zoning, <u>see</u> JACQUELINE P. HAND & JAMES C. SMITH, NEIGHBORING PROPERTY OWNERS §

debtor's intent to convey, and Crossland's intent to receive, an interest in residential property containing a single family dwelling as consideration for the loan. The single place in the record that mentions *only* the adjacent property is the property description attached to the mortgage. Considering the evidence collectively, however, the property description is not determinative of the parties' intent when compared to the "residential" language used repeatedly in the closing documents.

It should be noted that the appraisal report is also instructive in the court's analysis. The report is entitled "Appraisal Report of Single Family Residence at 688 Maple Drive Monongahela, PA 15063 as of 8/17/99". The bankruptcy court found, and the parties do not dispute, that the appraisal report was "conducted in connection with the 1999 loan application." (Appellant's App. at 324.)

The appraisal contains an addendum that lists "custom features" inside the residence, including a central vacuum system, security system, Jacuzzi tub in the master bathroom, wallpaper, brick fireplace, and tennis court. The appraisal also contains a subject photo addendum that provides front and rear pictures of a house that is identified as the subject property with an address of 688 Maple Drive. Finally, the appraisal incorporates a sketch addendum that identifies, among other things, a dining room, snack bar, foyer, porch, two-car garage, den, deck, covered patio, master bedroom, walk-in closet, and laundry. The appraisal report illustrates that the value of debtor's residence and its various "custom features" were used to calculate the amount of the loan in August 1999. It follows that the parties intended the mortgage to encumber the residential property based upon its appraised value.

---

8.01, at 182 (1988) ("At the highest point [of residential zoning] are detached, single-family homes, often with minimum lot sizes that are quite large. Other residential zones permit smaller lots, duplex houses, townhouses, and apartment buildings.").

In discerning the parties' intent, it is relevant that the $240,000 loan was used to satisfy an existing mortgage covering the residential and adjacent properties. See Trachtenberg v. Glen Alden Coal Co., 47 A.2d 820, 823 (Pa. 1946) (holding as a preliminary matter that the trial court properly found the mortgage failed to include both properties based upon mutual mistake and reformed the document; reasoning that evidence showing "proceeds of the mortgage loan were used to pay a debt secured by a then existing mortgage covering both lots" supported the trial court's decision to reform the instrument). The use of the proceeds of the August 1999 loan and the corroborating documents provides clear and convincing corroborating evidence that the parties intended to use the residential property as collateral for a new loan to satisfy the previous mortgage that encumbered the residential property.

Debtor argues that he always considered 688 Maple Drive to be the address of the adjacent property as well as the residential property, and therefore that the closing documents mentioning 688 Maple Drive may be a reference to either property. It is clear, however, that, collectively, the mortgage documents refer to the "subject property" address in conjunction with the terms "residence", "single family", and "single family residence". These terms when used with 688 Maple Drive indicate that debtor intended to convey an interest in the residential property bearing the 688 Maple Drive address. *See supra* p. 8, note 6.

Debtor submits that he fulfilled the occupancy requirements by "occupy[ing] the [adjacent] property as a yard and ha[s] made improvements to it, including a tennis court." (Appellee's Br. (Civil Action No. 10-449, Docket No. 3) at 5.) Debtor's argument that the landscaping and tennis court on the adjacent property qualify as occupation for purposes of the occupancy declaration and other closing documentation is inconsistent with his signing the occupancy declaration form at closing and checking the box affirming that he would "occupy the

subject property as my . . . principal residence . . . ." (Appellant's App. at 255.) Debtor's argument cannot stand for the proposition that he intended to convey an interest only in a vacant lot and occupy that lot as his principle residence when his home – his residence – was standing just a short distance away. Such a conclusion is detached from reality and the plain meaning of the term "residence" as it is used in the occupancy declaration and other closing documents.

Debtor's argument that he intended to convey an interest only in the adjacent property is negated by his admissions during the bankruptcy court hearing. Debtor stated that, at the closing, he "thought" that the residence was consideration for the loan. He also admitted that he "assumed" the mortgage encumbered the residential property in light of the appraised values of the properties and the loan amount approved by Crossland. These statements show debtor's intent at closing and reflect a mistaken belief that the mortgage encumbered his residence, when in fact the description in the mortgage was the adjacent property. See Daddona, 749 A.2d at 479, 488-89 (after considering witness testimony and corroborating circumstances, the court upheld the trial court's determination that "a mutual mistake existed in the execution of [a] right of way agreement, in that the parties to the agreement intended to include [an] existing driveway within the metes and bounds of the right of way described in the agreement").

Leach submits that Wells Fargo should be denied relief because Crossland (its successor in interest) did not properly execute the closing documents and failed to recognize the omission of the residential property description. Debtor's argument ignores General Electric's holding that negligence on the part of one party to a contract does not preclude that party from later requesting reformation based upon mutual mistake. General Electric, 263 A.2d at 457. There is no evidence in the record of prejudice to Leach or a violation of a legal duty by Crossland or Wells Fargo in failing to discover the error in the property description. Crossland's negligence

11

in preparing the closing documents or failure to discover the omission of the residential property in the mortgage do not impair Wells Fargo's right to correct the mutual mistake by having the mortgage reformed. The negligence alleged by debtor will not preclude the court from reforming the mortgage to reflect the true intent of the parties.

Wells Fargo argues that the mortgage should be reformed to include both properties. Debtor counters that only the adjacent property should be encumbered by the mortgage. Debtor testified under oath during the bankruptcy court hearing that, prior to closing, he gave Crossland the option to secure the mortgage with either the residential property or the adjacent property, but not both. (Hr'g Tr. at 19.) Debtor concludes that mutual mistake therefore cannot exist because Crossland attached the metes and bounds description of the adjacent property instead of the residential property. In other words, debtor argues that even if he intended to convey an interest in the residential property at closing, Crossland chose to encumber the adjacent property and there was no mutual mistake of a common material fact. There is no documentation or other corroborating evidence to support debtor's position.

The evidence is clear and convincing that at a minimum, a mutual mistake was made and the mortgage must be reformed to include the residential property. The court cannot discern, however, whether the bankruptcy court discredited debtor's statements regarding Crossland's option to secure only one property. The bankruptcy court's memorandum opinion does not reference debtor's statements regarding the option. If the bankruptcy court considered debtor's statements and found they were not credible, then the mortgage would be reformed to include both properties. If the bankruptcy court considered the statements and found them credible, then debtor's intent to convey only one property at closing may be given appropriate weight to determine whether the adjacent property should remain in the mortgage. The court will remand

12

the case for the purpose of having the bankruptcy court determine whether the statements regarding debtor's intent to convey only one property at closing were credible. Having concluded that the mortgage must be reformed, on remand the bankruptcy court may reconsider whether relief from the automatic stay should be granted.

### *Conclusion*

Viewed collectively, the evidence found by the bankruptcy court is of sufficient weight to clearly and convincingly establish that debtor and Crossland mistakenly believed that the mortgage encumbered the residential property. The documents, statements, and surrounding circumstances discussed *supra* reference the residential property as consideration for the loan. While a valid contract was formed at the real estate closing, the parties mistakenly believed that the property description included the residential property.

The court holds that, as a matter of law, Wells Fargo produced evidence that clearly and convincingly establishes a mutual mistake existed at closing and the mortgage should be reformed to include an accurate metes and bounds description of the residential property at 688 Maple Drive, Monongahela, PA 15063. The bankruptcy court's order dated February 23, 2010 will be reversed to the extent it is inconsistent with this opinion. The matter will be remanded in order for the bankruptcy court to determine whether debtor's statements regarding his intent to convey only one property at closing were credible and to consider whether the automatic stay should be lifted to allow Wells Fargo to pursue its remedies in state court.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: July 30, 2010